UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Lucas T. S.,

    Plaintiff,

v.

Martin J. O'Malley,
 Commissioner of Social Security
 Administration,

    Defendant.

No. 23-cv-0663 (JRT/DLM)

**REPORT AND RECOMMENDATION**

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Lucas T. S. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for benefits. This matter is before the Court on the parties' cross-filings. (Docs. 9 (Plaintiff's brief), 11 (Defendant's brief).) The case has been referred to the undersigned magistrate judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons below, the Court recommends that each parties' motion be partially granted and this matter be remanded to the Commissioner for further administrative proceedings consistent with this Recommendation.

BACKGROUND

On September 23, 2020, Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits, alleging he had been disabled since October 25, 2019. (Tr.[1] at 229–33.) The Social Security Administration ("SSA") denied his claim initially (Tr. at 83, 102), and upon reconsideration (Tr. at 116, 125). Plaintiff then timely requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 154–55.) The ALJ held a hearing on February 15, 2022. (Tr. at 32–65.) Counsel represented Plaintiff at the hearing (Tr. at 32, 34), and Plaintiff testified on his own behalf (Tr. at 44–61). A vocational expert also testified during the hearing (Tr. at 61–64).

On March 23, 2023, the SSA sent a notice of unfavorable decision to Plaintiff. (Tr. at 10–12 (Notice), 13–26 (decision).) In his decision, the ALJ found that Plaintiff had a number of severe impairments, including autism spectrum disorder ("ASD"), attention-deficit hyperactivity disorder ("ADHD"), dysthymic disorder (a chronic form of long-lasting depression), and post-traumatic stress disorder ("PTSD"). (Tr. at 17.) The ALJ found Plaintiff's remaining impairments to be non-severe, including low vision, pronated ankles, and asthma. (Tr. at 18.)

Yet despite Plaintiff's mental and physical impairments, the ALJ found that he is not disabled. (Tr. at 26.) In doing so, the ALJ determined that Plaintiff retains the residual

---

[1] The Commissioner filed the consecutively paginated transcript of the administrative record on May 19, 2023. (Doc. 7.) For ease of reference, citations to the transcript will identify the page number listed on the lower right corner of the cited document, rather than the docket page number or exhibit number of each document.

functional capacity ("RFC")[2] to perform a full range of work at all exertional levels with the following limitations: only occasional and superficial interactions with others, such as to receive instructions, relay information, and transfer materials; only routine tasks; and only work in an environment with routine, predictable changes to the setting and tasks. (Tr. at 20.) The ALJ then credited the testimony of the vocational expert that Plaintiff could still perform jobs in the national economy given these limitations, including as an industrial cleaner (Dictionary of Occupational Titles ("DOT") No. 381-687-018), salvage laborer (DOT No. 929-687-022), and machine feeder (DOT No. 699-686-010). (Tr. at 25, 62.) Plaintiff appealed the ALJ's decision to the SSA's Appeals Council, but the Appeals Council denied his request on February 1, 2023 (Tr. at 1), making the ALJ's decision the final decision of the Commissioner.

Plaintiff then filed this lawsuit seeking judicial review of the SSA's decision. Plaintiff does not contest that the ALJ followed the five-step sequential process laid out in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4) for evaluating DIB and SSI claims, respectively.[3] Rather, he challenges two aspects of the ALJ's decision that he claims merit

---

[2] "RFC is defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (quoting *Leckenby v. Astrue*, 487 F.3d 626, 631 n.5 (8th Cir. 2007)) (cleaned up).

[3] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If not, the ALJ must next decide (in step two) whether the claimant's impairments are severe, and of a duration of least 12 continuous months. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, the ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under Appendix 1 to Subpart P of Part 404. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If so, the claimant is considered disabled without further inquiry. If not, the ALJ must determine the claimant's RFC, and decide (at step four) whether the claimant

reversal. Plaintiff's first argument is that substantial evidence does not support the ALJ's determination that the medical opinion of his longstanding therapist, Henry Emmons, M.D., was only partially persuasive, and that it was legal error for the ALJ to fail to explain how consistent Dr. Emmons's opinion was with other medical opinions and findings in the record. Plaintiff's second argument is that his RFC is not supported by substantial evidence because it fails to account for both the absenteeism and off-task time limitations necessary to accommodate his mental impairments.

## ANALYSIS

This Court reviews an ALJ's denial-of-benefits decision to determine whether it is supported by substantial evidence in the record as a whole, and whether the decision is infected by legal error. 42 U.S.C. § 405(g); *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also Nash v. Comm'r, Soc. Sec. Admin*, 907 F.3d 1086, 1089 (8th Cir. 2018) (characterizing "substantial evidence" as "less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusions"). Courts reviewing ALJ decisions must look to the entire administrative record to decide whether it contains sufficient evidence to support (or detract from, as the case may be) the ALJ's conclusion. *Grindley v. Kijakazi*, 9 F.4th 622,

---

can still do their past work given their limitations. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, if the ALJ concludes a claimant cannot perform their prior work, step five requires the ALJ to determine whether they can do other work considering their RFC, age, education, and work experience. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

627 (8th Cir. 2021). If substantial evidence supports the ALJ's decision, the Court will not reverse, even if substantial evidence also supports a contrary outcome. *Nash*, 907 F.3d at 1089. But if an ALJ uses the wrong legal standard or incorrectly applies the law, those may be reversible legal errors. *Joel M. B. v. Kijakazi*, No. 21-cv-1660 (PAM/ECW), 2022 WL 1785224, at *2 (D. Minn. June 1, 2022) (citing *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011)); *Michael B. v. Kijakazi*, No. 21-cv-1043 (NEB/LIB), 2022 WL 4463901, at *1 (D. Minn. Sept. 26, 2022).

**I.    Substantial evidence supports the ALJ's determination on the persuasiveness of Dr. Emmons's medical opinion, and the ALJ did not legally err in reaching that determination.**

Plaintiff's first argument is that substantial evidence does not support the ALJ's determination that his therapist's medical opinion lacked persuasive value as to the amount of hours Plaintiff can work. Dr. Henry Emmons, who has been treating Plaintiff since 2014, opined that he did not think Plaintiff could sustain work of any more than 15–20 hours per week. Plaintiff claims that this opinion aligns with other medical evidence in the record, is based on Dr. Emmons's longstanding knowledge about and professional evaluation of Plaintiff's functional limitations, and was offered in a detailed format that was more thorough than a standard "check box" style form often accompanying medical provider opinions. Thus, Plaintiff argues that the ALJ should have assigned greater persuasive value to Dr. Emmons's opinion compared to the state agency consultants who either saw Plaintiff once or not at all, and who did not have the benefit of Dr. Emmons's opinion at the time of their evaluations. Aside from these substantial-evidence-related arguments, the Court also understands Plaintiff to be making a secondary argument: that the ALJ legally erred in his

5

discussion of Dr. Emmons's opinion because he did not address the factor of how consistent Dr. Emmons's opinion was with other medical opinions in the record.

The Commissioner disagrees, arguing that the ALJ properly evaluated the medical opinions and prior administrative medical findings in Plaintiff's case according to the required regulatory factors, and that the ALJ rightly credited the opinions and findings suggesting that Plaintiff had some limitations, but could still work full-time despite them, based on substantial evidence in the record. The Commissioner points out that even Dr. Emmons found Plaintiff had at-most *moderate* limitations in some functional areas, and contends that this assessment aligns with other record evidence—including the prior administrative medical findings of the state agency experts. That Dr. Emmons's opinion is alone in the record in concluding Plaintiff could work no more than 15–20 hours is, according to the Commissioner, evidence that the ALJ's conclusion that Plaintiff could work full-time is well-supported by, and consistent with, other record evidence. Additionally, the Commissioner points out that the ultimate conclusion about how much a person can work is a conclusion only the Commissioner can reach based on the evidence as a whole, and if a medical professional reaches such a conclusion, it can be disregarded as encroaching on a question reserved for the Commissioner.

The Court first considers whether substantial evidence supports the ALJ's conclusion that Dr. Emmons's opinion lacked persuasiveness on Plaintiff's inability to perform full-time work. In Dr. Emmons's statement on Plaintiff's mental ability to do work-related activities dated January 31, 2022, he concluded that Plaintiff had the following limitations: no limitations carrying out short, simple instructions or interacting

6

appropriately with the public/supervisors/co-workers; mild limitations understanding and remembering short, simple instructions; and moderate limitations in understanding, remembering, and carrying out detailed instructions, making judgments on simple work-related decisions, responding appropriately to typical workplace pressures, and responding appropriately to changes in a routine work setting. (Tr. at 522–23.) Dr. Emmons based his assessment of these limitations on medical and clinical findings that Plaintiff carries diagnoses of ADHD, ASD, dysthymia, and social anxiety. (*Id.*) Additionally, Dr. Emmons included two other capabilities that he believed required limitations to account for Plaintiff's impairments. (Tr. at 523.) On the first—stress resilience—Dr. Emmons noted that Plaintiff is "[u]nable to tolerate standard levels of stress" and "becomes anxious or depressed, unable to concentrate, [and] low energy." (*Id.*) On the second—reduced work stamina—Dr. Emmons stated that Plaintiff has "found that he cannot reasonably sustain more than 20 [hours] per week." (*Id.*) Dr. Emmons also accompanied his statement on Plaintiff's mental abilities relating to work with a letter containing "a brief clinical summary" for Plaintiff. (Tr. at 525.) In the letter, Dr. Emmons explains Plaintiff's diagnoses and their functional impacts, noting that although Plaintiff is intelligent, articulate, and positive—which may suggest he has a high degree of functionality—"he has shown enduring impairments in many key facets of his life, including relationships and [the] ability to do productive work" because "he does not have as much emotional resilience or stamina as most people his age." (*Id.*) The result of these functional impairments, according to Dr. Emmons, is that Plaintiff "does not tolerate normal workplace stresses and does not do well with typical work weeks" because in such

7

circumstances "[h]e becomes more anxious, and sometimes more depressed, which further impacts his ability to function." (*Id.*) Dr. Emmons then states,

> I believe there is real value in [Plaintiff's] ability to do some meaningful work, and I'm sure he shares this belief. However, I don't think it's realistic for him, at this point anyway, to engage in full-time work. My recommendation is for part-time work, up to 15-20 hours per week. Even then, he may go through times of more intense depression or other aspects of his condition that limit his function and necessitate occasional times off of work to allow him to recover.

(*Id.*)

The ALJ found Dr. Emmons's opinion partially persuasive. (Tr. at 24.) He observed that "while Dr. Emmons identifies symptoms, he does not identify clinical signs to corroborate the assessment [Plaintiff] cannot work full-time at any job," and determined that "the opinion lacks adequate support" as a result. (*Id.*) The ALJ agreed, however, with Dr. Emmons's assessment that Plaintiff could not work full-time in a retail setting, but concluded no evidence demonstrated that Plaintiff "would not be able to do any other work for forty hours per week." (*Id.*)

To support his finding on the inconsistency of Dr. Emmons's assessment when compared to other record evidence, the ALJ cited treatment records from speech-language pathologist Joseph Falkner, MST/CCC-SLP, state agency psychiatric expert Alford Karyusuf, M.D., and licensed social worker Amber Pone, MA, LICSW. (*Id.*) The Court has reviewed these records and finds that they contain some evidence that supports the ALJ's conclusions, and some evidence that contradicts those conclusions. (*See, e.g.*, Tr. at 437–44, 453, 457, 460, 466–68, 476, 478–80, 498, 503, 528–45.) For example, some treatment observations note that Plaintiff has contemplated whether he needs the support

of living in a group home environment, has struggled with basic hygiene and household tasks, has been supported financially by his parents, has struggled to meet work requirements when he has been employed because of symptoms of ASD, ADHD, and other mental impairments, and has needed help with strategies to ask for workplace accommodations such as shorter workdays. (*See, e.g.*, Tr. at 453, 466, 460, 479, 542, 545.) Other treatment observations note that Plaintiff can live in his own apartment, has successfully applied for and obtained part-time work, has worked on making his own budget, has been independently medication compliant, has been able to take care of household tasks, and despite social anxiety has enjoyed the company of his coworkers. (*See, e.g.*, Tr. at 460, 479, 498, 503, 528.) When evidence supports the ALJ's conclusions—even if they are not the conclusions that the Court would reach, and even where other evidence contradicts the ALJ's conclusions—the Court must find substantial evidence supports the ALJ's determination. *Nash*, 907 F.3d at 1089.

The Court next considers whether the ALJ legally erred in his evaluation of Dr. Emmons's opinion by failing to follow the steps required by regulation. Under 20 C.F.R. §§ 404.1520c and 416.920c, an ALJ must consider a number of factors when assigning persuasive value to a treating professional's opinion, with the factors of supportability and consistency deemed the most important. 20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2); *see also Violet G. v. Kijakazi*, No. 21-cv-2105 (TNL), 2023 WL 2696594, at *6 (D. Minn. Mar. 29, 2023) (collecting cases concluding that an ALJ's failure to address and explain supportability and/or consistency warranted remand). In short, an ALJ's allocation

of persuasive value will be considered legally sufficient upon court review for legal error where they explain supportability and consistency in their decision.

Here, the ALJ expressly found Dr. Emmons's opinion inconsistent with record evidence from Plaintiff's evaluations by Drs. Falkner and Karyusuf and Ms. Pone. (Tr. at 24.) He also found that Dr. Emmons had not identified clinical signs supporting his assessment that Plaintiff could not work full-time, leading to his conclusion that "the opinion lacks adequate support." (*Id.*) The Court therefore finds no legal error as to the requirements set forth in 20 C.F.R. §§ 404.1520c and 416.920c because the ALJ addressed the factors of consistency and supportability.

The Court also acknowledges, although it disagrees with, Plaintiff's argument that the ALJ should have assigned greater persuasive value to Dr. Emmons's opinion compared to the state agency consultants who either saw Plaintiff once or not at all, and who did not have the benefit of Dr. Emmons's opinion at the time of their evaluations. It is true that among the factors that an ALJ must consider when evaluating a medical opinion or prior administrative medical findings is the "[e]xamining relationship" of the medical professional. 20 C.F.R. §§ 404.1520c(c)(3)(v), 416.920c(c)(3)(v). This factor makes sense because "[a] medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder." 20 C.F.R. §§ 404.1520c(c)(3)(v), 416.920c(c)(3)(v). However, this "examining relationship" factor falls under the factors that the SSA "may, but [is] not required to, explain" in making its determination, unlike the mandatory factors of "supportability" and "consistency" which an ALJ must discuss. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). In other words,

10

courts assume that an ALJ considered the "examining relationship" when evaluating the persuasiveness of an opinion or finding. Here, the ALJ expressly discussed the two mandatory factors. Therefore, the Court finds no legal error in the ALJ's explanation of the persuasive value he assigned to Dr. Emmons's opinion, as it assumes the ALJ factored in Dr. Emmons's longstanding treatment relationship with Plaintiff as required.

**II.     Plaintiff's RFC is not supported by substantial evidence because the ALJ made no reviewable finding on the off-task time and absenteeism limitations resulting from Plaintiff's impairments.**

In Plaintiff's second argument, he contends that substantial evidence does not support the ALJ's determination that he could sustain a standard 40–hour workweek. He argues that it is clear from the record he cannot meet minimal workplace standards for off-task time and absences without a disability-related accommodation for the impacts of his ASD-related stress, anxiety, and fatigue. As a result, according to Plaintiff, his off-task time and absenteeism from these impairments should be reflected in his RFC, but the ALJ made no finding supported by substantial evidence on what amount of off-task time or absenteeism Plaintiff's impairments would require. Plaintiff also argues that he receives significant support from family and professionals to sustain activities he has engaged in (including at-most part-time work), and that without such supports (and sometimes even with them) he would be unable to sustain those activities. He claims that where an individual needs such supportive structures to succeed that are unavailable in a typical workplace, it is legal error for an ALJ to omit such limitations from that individual's RFC.

The Commissioner disagrees, arguing that the ALJ properly considered the evidence before him and that Plaintiff merely invites the Court to improperly reweigh that evidence

to reach a different conclusion. The Commissioner contends that Plaintiff cherry-picks evidence to try to show he cannot meet minimal workplace standards, and there is no evidence that Plaintiff ever asked for or received the accommodations he points to as evidence that his RFC is inaccurate. Finally, the Commissioner claims that Plaintiff does not qualify as a person who needs a structured living environment, as the record contains evidence he can perform various functions that a person who truly needs a structured living environment cannot do without help.

Turning to the ALJ's decision, the Court agrees with Plaintiff that the ALJ made no findings on Plaintiff's off-task time or absenteeism limitations, and thus, the Court cannot evaluate whether substantial evidence supports such findings. The ALJ found that Plaintiff had typically worked for eighteen hours each week as a cashier during the relevant period despite his severe impairments. (Tr. at 17.) Germane to the question of work hours, the ALJ found that Plaintiff had moderate limitations in concentrating, persisting, or maintaining pace and in adapting or managing himself. (Tr. at 19.) Specifically, the ALJ found that despite Plaintiff's testimony that he struggles with concentration, persistence, and maintaining pace, the record lacked objective evidence of reduced attention or concentration. (*Id.*) He also found that the fact that Plaintiff could work part-time, play video games, and perform household chores demonstrated he could complete tasks. (*Id.*) As to adapting and managing himself, the ALJ opined that although Plaintiff described his difficulties dealing with normal stress and the impact of his depression, including Plaintiff's testimony "that working prolonged hours exacerbates [his] mental symptoms and limitations," the ALJ found "the record lacks consistent signs of psychological

12

abnormalities." (*Id.*) The ALJ also found it significant that Plaintiff's symptoms improved with treatment, that he did not seek emergency medical help during the relevant period, and that he could live independently, cook and shop for himself, and work part-time. (*Id.*)

Based on this assessment of the record, the ALJ then fashioned an RFC for Plaintiff that did not account for any atypical off-task time or absenteeism. (Tr. at 20.) The ALJ noted that he reviewed the evidence on the impact of Plaintiff's ADS and other mental health conditions, including Plaintiff's testimony that he cannot work full-time because of his impairments that include depression, anxiety, and fatigue from the stress of a typical work environment. (Tr. at 21.) The ALJ concluded that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (*Id.*) The ALJ found some evidence Plaintiff's psychotropic medications, speech therapy, therapy, and counseling resulted in some improvement in Plaintiff's symptoms, but found the records generally lacking in "objective signs indicative of functional limitations" such as "mood disturbances, anxiety, or abnormal behavior to corroborate [Plaintiff's] core allegation that he is unable to perform any work activity on a consistent and full-time basis." (Tr. at 21–22.) The ALJ qualified this assessment by noting the record does contain *some* positive objective signs, including objective evidence of anxiousness, depressed moods, flights of ideas, tension, problems adapting to stress and functioning in crowded places, and difficulty maintaining appropriate social interactions and maintaining concentration and pace. (Tr. at 23.) However, the ALJ found such impairments amounted to the at-most moderate impairments that he found in Plaintiff's ability to concentrate, persist, or maintain

13

CASE 0:23-cv-00663-JRT-DLM   Doc. 12   Filed 01/08/24   Page 14 of 20

pace and to adapt or manage himself. (*Id.*) The ALJ also noted that he had accounted for Plaintiff's stress adaptation limitations by restricting him "to work environments with routine and predictable changes to the work setting and tasks." (*Id.*) At no point during this discussion did the ALJ make a finding on whether, or to what extent, Plaintiff's impairments would require him to be off-task or absent from work.

Based on the ALJ's discussion above, the Court cannot follow the ALJ's reasoning that limiting Plaintiff to work environments with routine and predicable changes to his work setting and tasks somehow accounts for any off-task time or absenteeism necessary because of Plaintiff's mental impairments. The Court also disagrees that Plaintiff cherry-picked evidence showing he has been unable to sustain work. And it likewise finds unpersuasive that the absence of evidence Plaintiff explicitly received a workplace accommodation for off-task time or absenteeism is evidence he needs no such accommodations. Plaintiff testified that he has never had a full-time job, and that even an 18–hour work week has been challenging given his impairments. (Tr. at 46, 49.) He explained that when he accrues too much stress from work, he experiences "burn out" where he struggles to get out of bed, make his own meals, get groceries, and attend events. (Tr. at 52–53, 58–59, 60.) The record, as the ALJ points out, corroborates this testimony with treatment records from medical professionals, including records from Dr. Emmons, among others. (Tr. at 23, 42–43, 368–73.) Indeed, the ALJ expressed concern during the February 15, 2022 hearing about what amount of off-time work and absences would preclude an individual with Plaintiff's background and limitations from competitive work, posing the following hypothetical to the vocational expert:

14

> [T]he inquiry here is as to full-time work, and if an individual was missing, say, a day a week, they wouldn't be working full-time. But in terms of inconsistency, so, if an employee is not getting brief absences pre-cleared, and they are just being absent from work, how much of that might an employer tolerate for competitive employment?

(Tr. at 63.) The vocational expert responded, "Your Honor, based on my experience and time studies I've reviewed, the acceptable tolerance at the unskilled level is approximately eight to nine days per year. And within those studies, Your Honor, they defined absenteeism as you did within your hypothetical." (*Id.*) Plaintiff's attorney followed up with a question about what "tolerance for off-task behavior" was present in the positions that the vocational expert had identified. (*Id.*) The vocational expert responded that, in her experience, "the acceptable tolerance is no more than 10% of the workday, and this is in addition to the two customary 15-minute breaks and the 30-minute meal break." (*Id.*) She also "noted that productivity at 90% . . . would be the . . . least amount [expected]," and that actually "[m]ore would be expected." (Tr. at 64.)

Given this record and the vocational expert's testimony, the Court finds that substantial evidence does not support the ALJ's determination because there is no discernible finding on the amount of off-task time and absenteeism Plaintiff's impairments require—and clear evidence that he would require some off-task time and workplace absences. "[T]o find a [plaintiff] has the residual functional capacity to perform a certain type of work, the [plaintiff] must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) (citing *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir. 1989)). While remand is not warranted simply

15

because an ALJ's decision could have been clearer, *see Noerper v. Saul*, 964 F.3d 738, 746 (8th Cir. 2020), remand is warranted "where the ALJ's factual findings, considered in light of the record as a whole, are insufficient to permit this Court to conclude that substantial evidence supports the Commissioner's decision." *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008) (citing *Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005); *Pettit v. Apfel*, 218 F.3d 901, 903–04 (8th Cir. 2000)). Such is the case here.

The Court also finds that the ALJ's error in failing to address off-task time and absenteeism is not harmless. The vocational expert testified that the jobs of industrial cleaner, salvage laborer, and machine feeder were all available to a hypothetical person with limitations similar to Plaintiff's, but that such roles would only tolerate off-task time of 10% or less during an eight-hour workday and time off of no more than eight to nine days each year. (Tr. at 62–64.) This makes sense where a plaintiff's RFC assesses their "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" and where "[a] 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). Given Plaintiff's testimony—corroborated by evidence in the record from multiple medical professionals—that even part-time work causes him significant struggles resulting in periods where he has been unable to leave his home and to perform basic self-care, the Court concludes that a finding by the Commissioner on off-task time and absenteeism is necessary.

How much more off-task time and work absences Plaintiff requires is a question for the Commissioner to determine in the first instance. *See Diane M. W.*, 2022 WL 4377731,

16

at *4 (explaining that the Court's role is not to weigh evidence in place of the Commissioner). But that question must be answered because where record evidence raises a question about whether off-task time and absenteeism will reduce the time a plaintiff can spend focused on work, an ALJ should provide a reviewable evaluation of a plaintiff's need for off-task time and absenteeism in their decision. *Baker v. Apfel*, 159 F.3d 1140, 1146 (8th Cir. 1998) (finding that if excessive absenteeism is caused by a plaintiff's impairment, it should be included in the RFC and considered by the vocational expert). If the ALJ were to find on remand that Plaintiff requires off-task time or absenteeism in excess of the 10% threshold—as seems possible if not likely on this record—then Plaintiff's ability to perform work would thus be precluded. Therefore, the ALJ's error in failing to address the evidence on Plaintiff's need for off-task time and absenteeism and to include commensurate RFC limitations is not harmless because the Court "cannot determine whether the ALJ would have reached the same decision denying benefits, even if [the ALJ] had followed the proper procedure." *Lucus v. Saul*, 960 F.3d 1066, 1070 (8th Cir. 2020) (quoting *Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003)); *see also Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) ("To show an error was not harmless, [Plaintiff] must provide some indication that the ALJ would have decided differently if the error had not occurred.") (citing *Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008); *Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003)).

Accordingly, on remand, the ALJ should reevaluate the evidence on how often and for how long Plaintiff's mental impairments, including, but not limited to, ASD, ADHD, PTSD, depression, and anxiety, will cause him to be off-task during and/or absent from

work—requesting any additional record evidence needed to make a determination on this issue—and should make explicit findings on how those limitations impact Plaintiff's RFC and ability to work.

One final matter remains. The Court has also relatedly considered whether substantial evidence supports the ALJ's conclusion that Plaintiff does not require a structured living environment be factored into his RFC. Plaintiff argues that he receives significant support from his family and professionals to sustain his everyday activities and that the ALJ should have taken this into account in his RFC. The Commissioner argues that substantial evidence supports the ALJ's conclusion that the evidence does not support the need to account for a structured living environment in Plaintiff's RFC.

Reviewing the record, the Court finds that substantial evidence supports the ALJ's conclusions. The ALJ found no evidence of any "marked" or "extreme" mental impairments that would demonstrate Plaintiff is unable or seriously limited in his "ability to function independently." (Tr. at 19–20.) He likewise found that "the evidence fails to establish the presence of . . . a highly structured setting that is both ongoing and that diminishes the symptoms and signs of the relative mental disorder." (Tr. at 20.) The ALJ supported this conclusion with evidence from the record that Plaintiff has been able to live independently from his parents, do household chores, prepare his own meals, do his own shopping, and perform some work—albeit part-time. (Tr. at 19–20.) The Court agrees with Plaintiff that there is contradictory record evidence suggesting he is not fully independent, such as evidence that Plaintiff had trouble remembering to take his medications independently, received financial support from his parents at some points, contemplated

with his parents whether he should live in a group home environment, needed help remembering to get a haircut, admitted to doing no dusting or vacuuming of his apartment for one year, and stated that he did his laundry and washed his dishes only once every two weeks. (*See, e.g.*, Tr. at 369, 370, 373, 453, 457, 466, 468, 479.) However, where there is evidence in the record that supports and ALJ's conclusions, even though there is other evidence that does not, the Court must find for the Commissioner. *Nash*, 907 F.3d at 1089.

Moreover, the Court agrees with the Commissioner's assessment that the caselaw cited by Plaintiff does not support that his level of functionality demonstrates his obvious need for a structured living environment, even if he does require more supports than a typical individual in the form of parental involvement, therapy/counseling, and medications. *See Blake R. v. Berryhill*, No. 17-cv-4273-KMM, 2019 WL 1229828, at *4–7 (D. Minn. Mar. 15, 2019) (remanding for further review by the Commissioner on the plaintiff's need for a structured living environment where a plaintiff lived at home, received significant support and prompting from his parents, had received special education support at school, and struggled with independent living skills such as adequate hygiene); *Lillard v. Berryhill*, 376 F. Supp. 3d 963, 983–84, 988 (E.D. Mo. 2019) (reversing and ordering an immediate award of benefits where a plaintiff only went into the community when accompanied by family or a caseworker, lived with his family, only performed chores in his home environment, did not manage his own finances, substantially depended on others for his meals, and generally relied on his family to solve everyday living issues). It may be that, here, Plaintiff's off-task time and absenteeism—due in part to his atypical responses to life stressors that require him to seek help from parents and professionals—will

19

demonstrate he is ineligible for competitive work; on remand, this question is before the Commissioner. But the Court finds the evidence in Plaintiff's case is not similar enough to that in *Blake R.* or in *Lillard* that remand is warranted on a similar basis.

## RECOMMENDATION

Based on the above, as well as on the files, records, and proceedings in this case,

**IT IS RECOMMENDED** that:

1. Plaintiff's Brief (Doc. 9) be **GRANTED IN PART** and **DENIED IN PART**;

2. Defendant's Brief (Doc. 11) be **GRANTED IN PART** and **DENIED IN PART**; and

3. The matter be remanded to the Social Security Administration pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Recommendation.

DATED:  January 8, 2024        *s/Douglas L. Micko*
                               DOUGLAS L. MICKO
                               United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).